UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

George Smith,

      Plaintiff,

      v.                              Civil Action No. 5:20–cv–6-gwc-jmc

Michael Touchette,
Centurion of Vermont LLC,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 15)

George Smith, a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by failing to provide adequate medical care for broken bones in his fingers. (Doc. 5-2.) Specifically, he claims that Defendants confiscated the splint he was wearing when he entered their custody and failed to provide proper, timely treatment, resulting in permanent damage to his fingers. (*Id.*; *see also* Doc. 5 at 5.) Smith names as Defendants Michael Touchette, former Commissioner of the Vermont Department of Corrections (DOC)[1], and Centurion of Vermont, LLC, a private entity that provides medical services to inmates in DOC custody. (Doc. 5 at 2–3; Doc. 15 at 11 n.2.) Smith seeks monetary relief. (Doc. 5 at 5.)

---

[1] Since the filing of this suit, Michael Touchette has stepped down as Commissioner of the DOC. As Touchette's successor has not yet been appointed, under Federal Rule of Civil Procedure 25(d), the Commissioner of the Vermont DOC is automatically substituted for Touchette with respect to the official-capacity claims brought by Smith.

Presently before the court is Defendants' unopposed Motion to Dismiss Smith's Complaint. (Doc. 15.) For the reasons set forth below, I recommend that Defendants' Motion to Dismiss (Doc. 15) be GRANTED.

## Background

In his Complaint, Smith alleges that, when he came into DOC custody at the Northwest State Correctional Facility on January 14, 2019, he had broken bones in his fingers and was wearing a splint. (Doc. 5-2.) He asserts that a DOC official "told [him] to take it off because it could be used as a weapon." (*Id.*) Smith states that he informed the prison's medical staff about his pain. They took x-rays to confirm that his bones were broken, taped his fingers, provided pain medication, and referred him to an orthopedic doctor. (*Id.*) Smith alleges that the orthopedic doctor told him, "It's too late, they waited too long to send you here to us," and said he "should [have] had a splint on [his] fingers." (*Id.*) He asserts that his fingers improperly healed and are now "perm[an]ently damage[d]." (*Id.*; Doc. 5 at 7.)

Smith seeks $2,000,000 in monetary damages as well as "$1,000 [per] day for every day [the] nurses [and] DOC . . . neglected previous orders prescribed by doctors and physical therapy recovery plans." (Doc. 5 at 5.)

## Analysis

### I. Standard of Review

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Id.* at 558. Because Smith is representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the

strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

## II.     42 U.S.C. § 1983

Smith brings his claims pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Smith alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

## III.    Exhaustion Under the Prison Litigation Reform Act (PLRA)

Defendants assert that Smith's Complaint must be dismissed because he failed to exhaust his administrative remedies. (Doc. 15 at 3–4.) Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Moreover, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA is "not a jurisdictional predicate," but rather "failure to exhaust is an affirmative defense." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). Because it is an affirmative defense, the burden lies with the defendant "to demonstrate nonexhaustion"; it is "not [the] [p]laintiff's burden to plead exhaustion with particularity." *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015); *see also Jones*, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."). Accordingly, the court should only grant a motion to dismiss on failure to exhaust grounds where "nonexhaustion

5

is evident on the face of the plaintiff's complaint." *Preterotti v. Souliere*, Civil Action No. 2:16–cv–72–wks–jmc, 2016 WL 7971319, at *3 (D. Vt. Dec. 28, 2016).

Inmates are exempt from the exhaustion requirement when administrative remedies are "unavailable." *Ross*, 136 S. Ct. at 1858. An administrative procedure is unavailable when (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Exhaustion is required even when some of the relief sought is not available under the grievance process. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) (holding that the PLRA requires exhaustion "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible"); *Weller v. Dykeman*, Civil Action No. 5:10–CV–181, 2012 WL 5409663, at *5 (D. Vt. Oct. 10, 2012) ("[P]risoners must utilize state grievance procedures even where the relief sought, such as money damages, is not offered through those procedures.").

Here, the DOC's grievance process requires that an inmate first file an informal complaint (Grievance Form #1), then a formal grievance (Grievance Form #2), followed by an appeal to the appropriate Corrections Executive (Grievance Form #5), and finally an appeal to the Commissioner (Grievance Form #7).[2] In his

---

[2] The court takes judicial notice of the DOC's grievance procedures, available at https://doc.vermont.gov/sites/correct/files/documents/policy/correctional/320.01-Offender-Grievance-System-for-Field-and-Facilities.pdf. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations).

Complaint, Smith states that he has only filed through Grievance Form #5 and is "waiting for results." (Doc. 5 at 7.) He does not allege that the DOC's grievance procedure is a dead end or that he has been thwarted from using it. He simply alleges that he is "unsatisfied with [the] proposed resolution." (*Id.*) Such dissatisfaction is insufficient to excuse Smith's obligation to exhaust administrative remedies. Because nonexhaustion is evident on the face of the Complaint, I recommend Defendants' Motion to Dismiss the Complaint for failure to exhaust administrative remedies be GRANTED.

## IV. Official-Capacity Claims for Money Damages

Defendant Touchette also move to dismiss Smith's claims against him in his official capacity. (Doc. 15 at 4–6.) Section 1983 allows suit against "persons." State officers sued in their official capacity are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Accordingly, Touchette in his official capacity is not a "person" under § 1983 and Smith's claims against him must be dismissed.

In addition, the Eleventh Amendment[3] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a

---

[3] The Eleventh Amendment bars federal suits against state governments by citizens of another state or foreign country as well as by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

7

state or a similarly clear abrogation of immunity by Congress. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). This protection also extends to suits for money damages against state officials in their official capacity. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The State of Vermont has not waived its Eleventh Amendment sovereign immunity. In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979). Consequently, Smith's claims against Touchette in his official capacity are barred.[4]

## V.     Personal Involvement

Defendant Touchette further argues that Smith's claims against him in his individual capacity should be dismissed for lack of personal involvement. (Doc. 15 at 6–7.) "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). However, supervisory officials may not be held liable merely because

---

[4] To the extent that the DOC is a party to this suit, and given its status as a state agency, any claims brought against it are also barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity); *see also Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983." (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))).

8

they hold positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage in the prison chain of command is insufficient to implicate [prison officials] in a § 1983 claim." (internal quotation marks omitted)).

In order to prevail on a § 1983 cause of action against an individual, a plaintiff must establish some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Thus, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Smith's Complaint does not allege any facts from which the court can infer that Touchette was personally involved in the alleged constitutional violations. Beyond being named as a party, Touchette's name does not appear in the text of the Complaint. Smith does not allege that Touchette himself instructed him to remove his splint or otherwise directly participated in any of his allegedly deficient medical care. He does not aver that Touchette had a policy or custom of confiscating orthopedic devices or inadequately treating broken bones. Smith does not even contend that Touchette was personally aware of the alleged constitutional violations; in fact, his Complaint reveals he did not complete the grievance process

9

through an appeal to Touchette.  *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011) (stating that defendants must become aware of the alleged unconstitutional acts while they are ongoing and capable of being remedied).  Thus, because Smith fails to establish a connection between Touchette and the alleged unconstitutional conduct, Smith's claims for damages against Touchette in his individual capacity should be dismissed for lack of personal involvement.

## VI.   Centurion's § 1983 Liability

Lastly, Centurion argues that Smith fails to state a claim against it because he does not show that a policy or custom promulgated by Centurion caused the allegedly inadequate medical care he received.  (Doc. 15 at 7–10.)  As a general matter, an employer cannot be held liable for the acts of its employees under the tort theory of respondeat superior in suits brought under § 1983.  *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  The Second Circuit has held that "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'"  *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (second alteration in original) (internal citations omitted) (quoting *Monell*, 436 U.S. at 691); *see also Cochran v. CCA-LAC Med. Dep't*, No. 1:06-CV-116, 2007 WL 431118, at *2–3 (D. Vt. Feb. 5, 2007).  "A policy or custom for purposes of 42 U.S.C. § 1983 may be explicit or may be inferred by constitutional violations that are so 'persistent and widespread' that they 'practically have the force of law.'"  *Zamani v. Nassau Cty.*, 14-CV-5606 (JFB)(SIL), 2015 WL 9943257, at *6 (E.D.N.Y.

Dec. 16, 2015) (quoting *Davis v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013)).

In this case, it is arguable that Centurion is more than a mere private corporation, since it provides medical care to prisoners on behalf of the State of Vermont. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided.").[5] But regardless of whether Centurion is considered a private corporation or a state actor, Smith still must allege that his inadequate medical care was caused by an action taken pursuant to an official policy or custom promulgated by Centurion. *Monell*, 436 U.S. at 691. His Complaint fails to do so.

Smith asserts that either a nurse or DOC official told him to remove his splint (Doc. 5 at 5; Doc. 5-2), and instead taped his fingers and referred him to an orthopedic doctor (Doc. 5-2). He asserts that this treatment was inadequate and that the delay in referring him to the orthopedic doctor caused permanent damage to his fingers. (*Id.*) However, these allegations simply describe an isolated incident of purportedly "unconstitutional conduct to which *he* was subjected." *Villafane v. Sposato*, CV 16-3674 (JFB) (AKT), 2017 WL 4179855, at *18 (E.D.N.Y. Aug. 22, 2017) (emphasis added) (internal quotation marks omitted). Smith does not allege

---

[5] Defendants readily admit that Centurion should be considered a state actor in this regard and argue that Centurion should therefore be shielded by sovereign immunity. (Doc. 15 at 10–12.) Because Smith has failed to allege that his inadequate and delayed treatment was the result of an official policy promulgated by Centurion, it is unnecessary to evaluate this argument at this time.

11

that these medical decisions were the result of a policy or custom promulgated by Centurion. Accordingly, I recommend that Smith's claims against Centurion be dismissed.

## VII. Leave to Amend

A *pro se* plaintiff should ordinarily be granted the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). Here, it is not clear that Smith can state a viable federal claim, "but [the Second] Circuit's precedent encourages giving [him] another opportunity." *Montpelier v. Green Mountain Care*, Case No. 2:19-cv-84, 2019 WL 5102715, at *3 (D. Vt. Oct. 11, 2019). Accordingly, I recommend that the court grant Smith leave to amend his Complaint.

Smith is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Accordingly, an Amended Complaint, if filed, must include all of Smith's factual allegations in their entirety and must set forth all the claims Smith has against all defendants and all the relief he seeks; reference back to the original Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont. *See* Fed. R. Civ. P. 8(a); L.R. 15(b). Equally important, an Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8. In the event Smith elects not to file an Amended Complaint, I

recommend dismissal of all claims for the reasons set forth in this Report and Recommendation.

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 15) be GRANTED, and that Smith be granted leave to amend his Complaint within 30 days of the court's order on this Report and Recommendation. In the event an Amended Complaint is not filed within that 30-day period, this matter should be closed.

Dated at Burlington, in the District of Vermont, this 12th day of August 2020.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).