U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2020 NOV 18  PM 3: 57

CLERK

BY _____
         DEPUTY CLERK

GEORGE SMITH,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        Case No. 5:20-cv-6
                                       )
MICHAEL TOUCHETTE,                     )
JIM BAKER[1] and CENTURION,            )
                                       )
        Defendants.                    )

## ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
### (Docs. 15, 16, 21)

On January 13, 2020, Plaintiff George Smith's Complaint, signed September 18, 2019,

was filed following the court's Order granting him leave to proceed *in forma pauperis* (IFP).

(Docs. 3, 5.)  Smith, a Vermont inmate representing himself, brings this action under 42 U.S.C.

§ 1983 against Defendants Michael Touchette, former Commissioner of the Vermont

Department of Corrections (DOC), and Centurion.  Because Touchette is no longer the

Commissioner of the DOC, his successor, Jim Baker is automatically substituted for Touchette

with respect to Plaintiff's official-capacity claims.  *See* Fed. R. Civ. P. 25(d).  Smith alleges that

when he entered DOC custody in January 2019, he had an existing injury consisting of broken

bones in his fingers and claims that Defendants violated his constitutional rights by failing to

provide adequate medical care.  (Doc. 5-2.)  He seeks monetary damages.  (Doc. 5 at 5.)

Defendants move to dismiss the Complaint for failure to state a claim.  (Doc. 15.)

Plaintiff did not oppose the motion.  On August 12, 2020, United States Magistrate Judge

---

[1] The Clerk's office is respectfully requested to include Defendant Baker on the docket in his official capacity as Commissioner of Vermont Department of Corrections.

John Conroy issued a Report and Recommendation (R & R) recommending that the motion to dismiss be granted and that Plaintiff be granted leave to amend his Complaint. (Doc. 16.) Plaintiff timely filed an objection to the R & R and Defendants responded. (Docs. 19, 20.) On October 16, 2020, Plaintiff filed a Motion for Summary Judgment. (Doc. 21.)

## Background

### I.     Allegations of the Complaint

Smith alleges that when he entered DOC custody at the Northern State Correctional Facility on January 14, 2019, he had broken bones in his fingers and was wearing a splint. (Doc. 5-2.) He asserts that a DOC officer "told [him] to take it off because it could be used as a weapon," and that a DOC staff nurse took the splint from him. (*Id.*; Doc. 5 at 5.) Smith states that he informed the prison medical staff about his pain. They took x-rays, confirming that the bones were broken, taped his fingers, provided pain medication, and referred him to an orthopedic doctor. (Doc. 5-2.)

Smith alleges that the orthopedic doctor told him that he "should of had a splint on [his] fingers" and that "they waited too long" to send him to the orthopedic doctor. (*Id.*) He asserts that his fingers healed improperly resulting in arthritis and permanent damage as a result of the lack of proper medical care and attention. (*Id.*; Doc. 5 at 7.)

In his form Complaint, signed September 18, 2019, in response to the inquiry whether the grievance process was complete, Smith stated: "Grievance #5, waiting for results, unsatisfied with proposed resolution." (Doc. 5 at 7.) He attached as an exhibit copies of the VT DOC Grievance Forms #1 and #2 both dated August 2019.[2] In the first grievance, Smith stated "I have two dislocated fingers that wasn't treated with the right medical care," and requested "money

---

[2] In evaluating a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

damages for the way my fingers are to this day." (Doc. 5-1 at 1.)  The plan for resolution

proposed by DOC Staff was "submit a med slip."  (*Id.*)  In the second grievance, Smith again

raised the same issue of lack of medical care for his fingers and sought money damages.  (*Id.*

at 2-3.)

      Smith seeks $2,000,000 in monetary damages as well as "$1,000 [per] day for every day

[the] nurses [and] DOC . . . neglected previous orders prescribed by doctors and physical therapy

recovery plans."  (Doc. 5 at 5.)

## II.    Procedural Background

### A.    Filing of Complaint

      On January 6, 2020, the court received for filing Smith's Application for Leave to

Proceed IFP, dated September 16, 2019.  (Doc. 1.)  The financial affidavit in support of his

Application was executed on November 25, 2019, and included a certificate completed by an

authorized officer of the Northeast Correctional Complex where Smith was confined regarding

his prison account balance dated December 30, 2019.  ((Doc. 1-1.)  His proposed form

Complaint for Violation of Civil Rights (Prisoner Complaint) dated September 18, 2019 was also

attached.  (Doc. 1-4.)

      On January 13, 2020, Magistrate Judge Conroy granted Smith's IFP Application and his

proposed Complaint was filed the same day.  (Docs. 3, 5.)  Defendant Centurion was served on

February 12, 2020.  (Doc. 11.)  Defendant Touchette's official capacity waiver of service form

was executed February 6, 2020, and his individual capacity waiver was executed February 24,

2020.  (Docs. 10, 14.)

### B.    Defendants' Motion to Dismiss

      On March 12, 2020, Defendants jointly filed a motion to dismiss the Complaint for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendants argued

principally that Smith's Complaint should be dismissed because he did not exhaust his administrative remedies prior to filing his complaint on January 13, 2020. Secondarily, they argued Smith's Complaint fails to state a cause of action against any Defendant. (Doc. 15 at 2.)

Although the court informed Smith of the importance of responding to a motion by defendants, warning that failure to respond may result in dismissal of his case (*see* Doc. 3 at 3-4), Smith did not file a response to the motion.

## C.    Report and Recommendation

In the August 12, 2020 R & R, the magistrate judge concluded that because Plaintiff's non-exhaustion of administrative remedies was "evident on the face of the Complaint," Defendants' motion to dismiss for failure to exhaust administrative remedies should be granted. (Doc. 16 at 7.)

The magistrate judge further recommends the official capacity claims against the Vermont DOC Commissioner be dismissed because the DOC Commissioner in his official capacity is not subject to suit under § 1983 and because the Eleventh Amendment to the United States Constitution bars suits for money damages against state officials in their official capacity. (*Id.* at 7-8.) The magistrate judge recommends dismissal of the personal capacity claims because Smith fails to allege Defendant Touchette was personally involved in the alleged constitutional violations.  (*Id.* at 8-10.)

With regard to Defendant Centurion, the magistrate judge recommends dismissal of the § 1983 claim against it because Smith failed to allege that his inadequate medical care was caused by an action taken pursuant to an official policy or custom promulgated by Centurion. (*Id.* at 10-12.)

4

Although the magistrate judge recommends that the court dismiss Smith's claims against all Defendants, he further recommends the court grant Smith leave to amend his Complaint. (*Id.* at 12-13.)

## D.    Parties' Responses to R&R

### 1.   Smith's Objection

After initially requesting and receiving an extension of the time to object to the R&R, Smith timely filed an objection to the R & R.[3] (Doc. 19.)  Smith asserts that Defendants misrepresented that he had not exhausted his remedies.  In support, he attached copies of VT DOC Grievance Forms #6 and #7.  (Docs. 19-1, 19-2.)  He also notes that motions to dismiss are not favored and argues that he has stated a claim for relief for deliberate indifference to his medical needs.  Citing 28 V.S.A. § 801, he argues "DOC officials had taken the splint before the time it was supposed to be taken off in violation of the medical directives that protect inmates and keep them safe and healthy." (Doc. 19 at 5.)

Grievance Form #6, titled Response to Appeal to Corrections Executive, indicates that Smith appealed to the corrections executive on September 6, 2019.  The response, dated October 2, 2019, states in the entirety:

> Mr. Smith, pertinent medical records were reviewed to consider your grievance regarding your finger injury.  This injury occurred prior to your admission to the correctional facility, during your incarceration you received care including x-rays and follow up with outside specialists.  The orthopedic physician has determined that the outcome of the injury would have been different had you sought care at the time of injury, at this time there are no further surgical interventions that would be appropriate.  This grievance is resolved.

---

[3] Although titled "Relief from Judgment Order," the court construes the filing as Plaintiff's objection to the August 12 R&R.  Plaintiff's objection, dated September 10, 2020, likely crossed in the mail with the court's Order granting his motion for extension, also dated September 10, 2020. (Docs. 17, 18.)

(Doc. 19-1.)  Smith asserts that he did not receive this response until October 21, 2019, which he

alleges was beyond the deadline required for a response under the DOC's grievance procedures.

(Doc. 19 at 4.)

Grievance Form #7, titled Decision Appeal to Commissioner, consists of Smith's

handwritten explanation of why he was "not satisfied with the response to [his] grievance appeal

from the Corrections Executive" dated October 2, 2019.  (Doc. 19-2.)  In Form #7, dated

October 21, 2019, Smith alleged his splint:

> got taken from me by an NWCF Officer and I was then improperly given medical
> treatment by the nursing staff taping my fingers together and causing my fingers
> to be deformed and also the loss of total [illegible] of my fingers.  Your nursing
> staff have neglected my medical treatment.  I want compensation for my medical
> injury due to the fact that this facility did not [illegible] treat me and took away
> my only means to heal my fingers.  Currently, I feel this is cruel and unusual
> punishment and medical neglect.  Will you correct this issue please?

(Doc. 19-2.)

## 2.  Defendants' Response

Defendants' filed a response to Smith's objection to the R&R asserting that "Plaintiff

does not raise allegations that warrant the reconsideration" of the R&R and requesting the court

"approve" the R&R and dismiss Smith's Complaint.  (Doc. 20 at 2.)

With regard to Smith's allegation of a misrepresentation by Defendants that Smith had

not exhausted his administrative remedies, Defendants argue they "relied on Plaintiff's

Complaint and attached documents to support the assertion Plaintiff had not exhausted his

administrative remedies."  (Id. at 3.)  Acknowledging Smith's filing of additional exhibits,

Defendants contend:

> This is new information that was not included when Plaintiff filed his Complaint.
> Defendants did not "misrepresent" Plaintiff's grievance information to the Court
> as Plaintiff suggests.  Rather, this is new information that was not originally
> available.  However, it is still clear on the face of Plaintiff's Complaint and
> accompanying documentation that Plaintiff did not complete the administrative
> grievance process because Plaintiff did not receive a response from the

Commissioner.  Accordingly, the Magistrate's determination in the [R & R] concerning Plaintiff's failure to exhaust his administrative remedies should be upheld.

(Doc. 20 at 5.)

Defendants further summarily assert Smith's remaining objections are "generalized concerns" that reiterate his Complaint allegations and do not clarify how his Complaint can be sustained against either Defendant.  (*Id.*)

## Analysis

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999).  The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405.

## I.     Legal Standard for a Rule 12(b)(6) Motion to Dismiss

In evaluating whether a complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102,

104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). A complaint is properly dismissed where, as a matter of law, "the allegations in [it] however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Because Smith is representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56-57 (2d Cir. 2016) (per curiam). Although the motion to dismiss is unopposed, Smith's lack of an opposition is not dispositive, and the magistrate judge properly considered the merits of Defendants' arguments. See *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

## II.    Section § 1983

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* The Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and

[(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In his form Complaint, Smith indicated that he was bringing suit against state or local officials under § 1983. The court construes Smith's claim as alleging that Defendants deprived him of his Eighth Amendment right to adequate medical care. This right is recognized by the Cruel and Unusual Punishments Clause of the Eighth Amendment, which imposes a duty on prison officials to provide adequate medical care to prisoners. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).

## III.    Failure to Exhaust

### A.    Prison Litigation Reform Act

As the magistrate judge explained, under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"). The exhaustion requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), even when the relief sought is not available through the procedures, *Weller v. Dykeman*, Civ. Action No. 5:10–CV–181, 2012 WL 5409663, at *5 (D. Vt. Oct. 10, 2012) ("[P]risoners

must utilize state grievance procedures even where the relief sought, such as money damages, is not offered through those procedures.").

Exhaustion under the PLRA, however, is not a jurisdictional predicate. "'[F]ailure to exhaust is an affirmative defense,' and 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (quoting *Jones*, 549 U.S. at 216). Because it is an affirmative defense, the burden lies with the defendant "to demonstrate nonexhaustion[;]" it is "not [the] [p]laintiff's burden to plead exhaustion with particularity." *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015).

The Vermont DOC's grievance process requires that an inmate first file an informal complaint (Grievance Form #1), then a formal grievance (Grievance Form #2), followed by an appeal to the appropriate Corrections Executive (Grievance Form #5), and finally an appeal to the Commissioner (Grievance Form #7).[4] "The Commissioner's office will respond to all appeals within twenty (20) business days of receiving the appeal." Offender Grievance System #320.01 at 15, ¶ 15(b)(i). As Defendant's note, the DOC grievance process "is completed upon return of a Commissioner's decision, the disposition is considered final in regard to an administrative remedy." (Doc. 20 at 4 (internal quotation marks omitted).)

The Second Circuit has recently held an inmate exhausts administrative remedies when he follows the entire procedure but the last appellate body within the administrative scheme fails

---

[4] The court takes judicial notice of the DOC's grievance procedures, available at https://doc.vermont.gov/sites/correct/files/documents/policy/correctional/320.01-Offender-Grievance-System-for-Field-and-Facilities.pdf (Offender Grievance System #320.01). *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations); *see also Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020) (discussing and citing New York State's Inmate Grievance Program).

10

to respond within the deadline provided by the grievance procedure. *Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020).

## B.    Defendants' Affirmative Defense of Failure to Exhaust

As noted above, Smith is not required to specially plead or demonstrate exhaustion in his Complaint. Instead, because it is an affirmative defense, the burden lies with Defendants to demonstrate non-exhaustion. For this reason, "the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 583 (S.D.N.Y. 2015) (internal quotation marks omitted). The magistrate judge noted that "the court should only grant a motion to dismiss on failure to exhaust grounds where 'nonexhaustion is evident on the face of the plaintiff's complaint.'" (Doc. 16 at 5-6 (quoting *Preterotti v. Souliere*, Civ. Action No. 2:16–cv–72–wks–jmc, 2016 WL 7971319, at *3 (D. Vt. Dec. 28, 2016)).)

Here, where the court is required to draw all reasonable inferences in Smith's favor and to read his Complaint liberally and construe it to raise the strongest possible arguments it suggests, the court cannot find that Defendants demonstrated Smith's nonexhaustion of administrative remedies. Although the Complaint stated Smith was waiting for results of Grievance #5 as of September 18, 2019, Smith waited over two months, until November 25, to prepare his financial affidavit in support of his IFP Application. The affidavit was not completed by prison authorities until December 30, 2019. The Offender Grievance System required a response from the Corrections Executive to Grievance Form #5 within twenty business days. In fact, the Executive's response on Grievance Form #6 was issued October 2, 2019. Notwithstanding the allegation that Smith did not receive that response until October 21, 2019, his appeal to the Commissioner, submitted on Grievance Form #7 and also dated October 21, 2019, should have been resolved before the filing of Smith's Complaint in this court in January 2020. Given that timeline, and the passage of time prior to Smith submitting his proposed

11

Complaint, the court infers that Smith exhausted his administrative remedies even if the

Commissioner failed to respond. *See Hayes*, 976 F.3d 259 (reversing grant of summary

judgment to prison officials where inmate had followed the administrative procedure but the

appellate body had failed to respond within the time allowed).

　　In any event, Defendants should have verified whether Smith had followed the Offender

Grievance System through to conclusion prior to filing their motion to dismiss in March 2020.

The court expects that Defendants—including the DOC Commissioner to whom Grievance #7

was directed—would have investigated this information prior to asserting their affirmative

defense. Indeed, the Offender Grievance System notes that the DOC maintains a grievance

database so the inquiry should have required little effort. In light of the Second Circuit's

decision—issued the same day Defendants submitted their response—the court is unpersuaded

by Defendants' assertion that because Smith apparently has still not received a response from the

Commissioner, the magistrate judge's recommendation concerning Smith's failure to exhaust his

administrative remedies should be upheld.

　　Here, where there was a distinct delay of almost four months between the signing of the

Complaint and its filing with the court, the court finds Defendants failed to carry their burden to

demonstrate that Smith failed to exhaust his administrative remedies. The record now includes

copies of Grievance Forms #6 and #7. Because Form #7 is dated October 21, 2019, the

Commissioner should have returned a decision—which would be considered final in regard to

administrative remedy—well in advance of the filing of Smith's Complaint in this court. The

court finds it would be a waste of the court's and the parties' resources to dismiss Smith's

Complaint because exhaustion is not evident on its face. Accordingly, the court declines to

adopt the recommendation of the magistrate judge on this issue; Defendants' motion to dismiss

based on the affirmative defense of non-exhaustion is DENIED.

## IV.    Failure to State a Claim

Under the test established by the Supreme Court, the inquiry in a § 1983 action like this is generally "whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This test has objective and subjective components. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  The objective prong looks to the severity of the alleged deprivation while the subjective prong asks whether the prison official acted with a sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

### A.    Official Capacity Claim against DOC Commissioner

Defendants argue that Smith's claims against the DOC Commissioner in his official capacity are barred by Vermont's sovereign immunity under the Eleventh Amendment to the United States Constitution.  (Doc. 15 at 4-5.)  They further argue that any claim against the DOC Commissioner in his official capacity fails because he is not a "person" subject to suit under § 1983 in his official capacity.  (*Id.* at 5-6.)

The Eleventh Amendment[5] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state, or a similarly clear abrogation of the immunity by Congress.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity.  *Pennhurst*, 465 U.S. at 100; *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)

---

[5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has also been interpreted to bar federal suits against state governments by a state's own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

(noting Eleventh Amendment immunity extends to "state agents and state instrumentalities that are effectively arms of the state" (internal quotation marks omitted)).  Suits against state actors in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent" and "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks omitted); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State. . . . [T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.").

The State of Vermont has not waived its Eleventh Amendment sovereign immunity.  In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment.  *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived).  It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979).

Further, § 1983 allows suit against "persons."  "'Neither a state nor one of its agencies . . . is a 'person' under § 1983.'"  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998)).  A suit for damages against a DOC official sued in his or her official capacity is also barred.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against that official but rather is a suit against the official's office.").

Accordingly, the court adopts the recommendation of the magistrate judge; Defendants'

Motion to Dismiss is GRANTED with respect to Smith's claim against the DOC Commissioner

in his official capacity.

## B.   Individual Capacity Claim against Defendant Touchette

Defendants argue that Smith's claim against Defendant Touchette, in his individual

capacity fails because Defendant Touchette was not personally involved in Smith's medical care.

(Doc. 15 at 6-7.)

As the magistrate judge explained, "'[i]t is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983.'" (Doc. 16 at 8 (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*,

719 F.3d 127, 135 (2d Cir. 2013)).); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

However, supervisory officials may not be held liable merely because they hold positions of

authority. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage

in the prison chain of command is insufficient to implicate [prison officials] in a § 1983 claim."

(internal quotation marks omitted)).

To prevail on a § 1983 claim against an individual, a plaintiff must establish some

"tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*,

790 F.2d 260, 263 (2d Cir. 1986). Thus, supervisory personnel may be considered personally

involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after

learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom

under which the violation occurred; (4) had been grossly negligent in managing subordinates

who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by

failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*,

58 F.3d 865, 873 (2d Cir. 1995).[6]

Here, as the magistrate judge highlighted, other than being named as a party, Defendant

Touchette's name does not appear in the text of the Complaint. The magistrate judge further

noted:

> Smith does not allege that Touchette himself instructed him to remove his splint
> or otherwise directly participated in any of his allegedly deficient medical care.
> He does not aver that Touchette had a policy or custom of confiscating orthopedic
> devices or inadequately treating broken bones. Smith does not even contend that
> Touchette was personally aware of the alleged constitutional violations; in fact,
> his Complaint reveals he did not complete the grievance process through an
> appeal to Touchette.

(Doc. 16 at 9-10 (internal citations omitted).) Given this analysis, the magistrate judge

concluded Smith failed to establish a connection between Defendant Touchette and the

allegedly unconstitutional conduct and recommended Smith's claim for damages against

Touchette in his individual capacity be dismissed for lack of personal involvement. (*Id.*

at 10.)

Following the filing of Smith's objection to the R& R, however, it is clear that an appeal

to the Commissioner was filed. Prior to the filing of Smith's Complaint, however,

Commissioner Touchette resigned. Because Smith's Complaint does not contain any allegations

regarding Defendant Touchette's personal involvement—such as that he failed to remedy the

violation after learning of it through the appeal—the Grievance Form #7 was attached to Smith's

R & R objection, and, as discussed below, Smith may amend his complaint, the court adopts the

---

[6] "The Second Circuit has recognized that, in light of *Iqbal*, not all of the *Colon* factors may have
survived, but it has yet to definitively identify which factors remain applicable." *Kucera v. Tkac*, No.
5:12-cv-264, 2013 WL 1414441, at *4 (D. Vt. Apr. 8, 2013) (citing *Reynolds v. Barrett*, 685 F.3d 193,
205 n.14 (2d Cir. 2012)).[6] The "majority view" of the district courts in the Second Circuit is that "the five
*Colon* categories supporting personal liability of supervisors still apply as long as they are consistent with
the requirements applicable to the particular constitutional provision alleged to have been violated." *Id.*
at *5 (collecting cases) (internal quotation marks omitted).

recommendation of the magistrate judge. Defendants' Motion to Dismiss is GRANTED without prejudice with respect to Smith's claim against former DOC Commissioner Touchette in his personal capacity.

## C.    Claim against Defendant Centurion

Defendants argue that Smith also fails to state a claim against Defendant Centurion because he does not allege that a policy or custom promulgated by Centurion caused the allegedly inadequate care he received. (Doc. 15 at 7-10.) They further argue that Defendant Centurion is shielded from § 1983 claims by sovereign immunity. (*Id.* at 10-12).

Generally, an employer is not liable for the acts of its employees under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Although this rule was initially established in the context of municipal employers, it has been extended to private employers as well. *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Draeger v. Grand Cent., Inc.*, 504 F.2d 142, 145–46 (10th Cir. 1974). Accordingly, in the ordinary case, private employers like Centurion are not liable for the constitutional torts of their employees, "unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)); *see also Vega v. Fox*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006); *Cochran v. CCA-LAC Med. Dep't*, No. 1:06-cv-116, 2007 WL 431118, at *2–3 (D. Vt. Feb. 5, 2007).

In this case, it is arguable that Centurion is more than a mere private corporation, since it provides medical care to prisoners on behalf of the State of Vermont. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor

17

rendering such services a state actor within the meaning of § 1983 with respect to the services so provided."). But regardless of whether Centurion is considered a private corporation or a state actor, Smith still must allege that his inadequate medical treatment was caused by an action taken pursuant to an official policy or custom promulgated by Centurion. *Monell*, 436 U.S. at 691. Smith has not made such a claim in his Complaint. (*See generally* Docs. 5, 5-2.)

Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of liability against Defendant Centurion. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Accordingly, I adopt the recommendation of the magistrate judge; Defendants' Motion to Dismiss is GRANTED with respect to Smith's claims against Defendant Centurion.

## V.    Leave to Amend

In accordance with Second Circuit precedent, the magistrate judge has recommended that Smith be granted leave to amend his Complaint. (Doc. 16 at 12.) A self-represented plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted); *see also Garcia v. Super. of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (cautioning leave to amend should be granted at least once unless amendment would be futile). Smith may, therefore, amend his Complaint.

As Smith seeks monetary damages—which are barred against the DOC Commissioner in his official capacity and would be barred against the DOC itself and perhaps Centurion as well— the court infers that the absence of individual defendants in the Complaint is because Smith is not currently aware of the identity of those directly responsible for his allegedly-inadequate medical care. "While a plaintiff generally cannot bring a claim against an unidentified person, the rule is not applied strictly against pro se plaintiffs, especially when incarcerated[.]" *Warren*

*v. Goord*, 476 F. Supp. 2d 407, 13 (S.D.N.Y. 2007). The Second Circuit has recognized that a self-represented litigant may be entitled to assistance from a district court in ascertaining the identity of an unidentified defendant. *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) ("From his place of incarceration, it is hard to see what investigative tools would be at his disposal to obtain further information on [the defendant's] identity."). Indeed, "a district court has an obligation to assist an incarcerated *pro se* litigant to obtain discovery necessary to identify an unidentified individual defendant in order to avoid dismissal." *Wilson v. 103RD Precinct*, 182 F.3d 902, 904 (2d Cir. 1999). Accordingly, a district court is empowered with broad discretion to attempt to ascertain the identity of the defendants in question. *See Valentin*, 121 F.3d at 76 ("The district court may pursue any course that it deems appropriate to a further inquiry into the identity of [unidentified defendants].").

Although the current claims against the DOC Commissioners and Centurion are dismissed, counsel for these Defendants is nonetheless ordered to release to Plaintiff all reports regarding his medical care, and to assist him in ascertaining the identities of all individuals involved in his medical treatment for the period of January 2019 to September 2019. This order merely provides a means by which Plaintiff may name the individual defendants as instructed by the Second Circuit. The assistance shall be rendered by December 17, 2020. Smith may file an Amended Complaint naming those individuals he intends to sue no later than 60 days after receiving the identifying information.

## VI.    Appointment of Counsel

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 68 (2d Cir. 2011). Nevertheless, a party granted IFP status may request the appointment of an attorney if unable to afford one on their own. *See* 28 U.S.C. § 1915(e)(1). A court may ask an attorney to represent

an indigent litigant under § 1915(e)(1), but there are no court funds available to pay an attorney. *Clarke v. Blais*, 473 F. Supp. 2d 124, 125 (D. Me. 2007). "As a result, [these] appointments occur very rarely, being saved for cases that appear to have some chance of success." *Id.* (footnote omitted). A district court is granted "[b]road discretion" in making this decision. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

The Second Circuit has laid out a framework for determining whether counsel should be appointed for IFP litigants in civil cases. *Id.* at 61. As a threshold requirement, a court must determine whether the indigent's claim "is likely one of substance." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Hodge*, 802 F.2d at 61). Once satisfied, the court

> should then consider the indigent's ability to investigate the crucial facts,
> whether conflicting evidence implicating the need for cross-examination will
> be the major proof presented to the fact finder, the indigent's ability to present
> the case, the complexity of the legal issues and any special reason . . . why
> appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62. A court may also consider if the indigent party has made an effort to retain counsel and the general availability of counsel able to provide representation on a pro bono basis. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *see also Hodge*, 802 F.2d at 61.

Here, Smith is incarcerated and the court granted his motion to proceed IFP; therefore, there is little question he is unable to afford counsel on his own. He seeks to bring this action under 42 U.S.C. § 1983 alleging a violation of his constitutional rights caused by the confiscation of a splint required for the proper healing of his broken fingers. Plaintiff primarily seeks to allege an Eighth Amendment claim that he has not received adequate medical care, requiring him to prove that prison officials acted with "deliberate indifference" to his serious medical needs. *Hathaway*, 37 F.3d at 68. Although Smith has not requested the appointment of counsel or

20

contended that he has made efforts to obtain counsel on his own, the court finds appointment of counsel would be more likely to lead to a just determination in this matter. Although Smith is in possession of the grievance materials, it appears that he is unaware of the identities of all individuals involved in his medical treatment. Smith's ability to investigate the crucial facts would be aided by counsel. In these circumstances, where the court finds that Plaintiff may raise a claim that is likely of substance, analysis and presentment by counsel will assist the court in evaluating the claims.

## CONCLUSION

For the reasons discussed, after careful review of the file, the Report and Recommendation, and the parties' subsequent filings, this court ADOPTS in part and REJECTS in part Magistrate Judge Conroy's recommendations (Doc. 16). Defendants' Motion to Dismiss (Doc. 15) is GRANTED IN PART and DENIED IN PART. In light of this ruling, Plaintiff's Motion for Summary Judgment (Doc. 21) is DENIED as premature.

The court finds appointment of counsel to be warranted and hereby appoints David Bond, Esq. as counsel for Smith. Although Plaintiff's current claims are dismissed, counsel for Defendants shall release to Plaintiff through his appointed counsel all reports regarding his medical treatment to assist in ascertaining the identities of all individuals involved in Smith's medical treatment for the period of January 2019 to September 2019. This assistance must be rendered no later than December 17, 2020. Plaintiff may then file an Amended Complaint no later than 60 days after receiving the identifying information. In the event Plaintiff elects not to file an Amended Complaint, this case will be closed.

Dated at Rutland, in the District of Vermont, this 18th day of November 2020.

/s/ Geoffrey W. Crawford
Geoffrey W. Crawford, Chief Judge
United States District Court

21